UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTOPHER GARCIA,

Plaintiff,

v.

DEZBA ASSET RECOVERY, INC. *and*
CAPITAL ONE AUTO FINANCE, INC.,

Defendants.

No. 22-CV-01736 (KMK)

OPINION & ORDER

Appearances:

Yitzchak Zelman, Esq.
Marcus & Zelman, LLC
Asbury Park, NJ
*Counsel for Plaintiff*

Aviva Stein, Esq.
Wilson & Chan LLP
New York, NY
*Counsel for Defendants*

Ian B. Forman, Esq.
Malapero & Prisco LLP
New York, NY
*Counsel for Defendants*

Blaec Croft, Esq.
Philip Goldstein, Esq.
McGuireWoods LLP
Pittsburgh, PA
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Christopher Garcia ("Plaintiff") brings this Action, for violations of the Fair Debt

Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692f, and for violations of New York law,

including claims for unlawful repossession, N.Y. U.C.C §9-609, unfair and deceptive practices in

trade or commerce, N.Y. Gen. Bus. Law § 349, and conversion against Dezba Asset Recovery

Inc. ("Dezba") and Capital One Auto Finance Inc. ("Capital One", altogether, "Defendants"),
alleging that Defendants illegally repossessed Plaintiff's vehicle, breached the peace, and tricked
Plaintiff into making a payment only to then repossess his vehicle.  (*See generally* Second Am.
Compl. ("SAC") (Dkt. No. 30).)  Before the Court is Defendants' Motion To Dismiss the claims
brought in the Second Amended Complaint (the "Motion") pursuant to Federal Rule of Civil
Procedure 12(b)(6).  (*See* Dec. in Support of Mot. (Dkt. No. 34).)

For the reasons stated herein, the Motion is granted in part and denied in part.

## I.  Background

### A.  Allegations and Materials Appropriately Considered

As a threshold matter, the Court must determine whether it may consider the following
documents at this stage of the litigation: (1) the Retail Installment Sale Contract ("Original
Contract") and (2) the Temporary Payment Reduction Agreement ("TPRA"), both attached to
Defendants' Motion to Dismiss; and (3) the Capital One email ("Email") attached to Plaintiff's
Opposition.

#### 1.  Applicable Law

Generally, "[w]hen considering a motion to dismiss, the Court's review is confined to the
pleadings themselves," because "[t]o go beyond the allegations in the [c]omplaint would convert
the Rule 12(b)(6) motion to dismiss into one for summary judgment pursuant to [Rule] 56."
*Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002)
(citation omitted).  However, "the Court's consideration of documents attached to, or
incorporated by reference in the [c]omplaint, and matters of which judicial notice may be taken,
would not convert the motion to dismiss into one for summary judgment."  *Id.* (citations
omitted); *see also Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (explaining that "when ruling
on Rule 12(b)(6) motions to dismiss," courts may "consider the complaint in its entirety. . .,

documents incorporated into the complaint by reference, and matters of which a court may take judicial notice") (quotation marks omitted); *Hu v. City of N.Y.*, 927 F.3d 81, 88 (2d Cir. 2019) ("In deciding a Rule 12(b)(6) motion, the court may consider 'only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial notice may be taken.'") (alteration omitted) (quoting *Samuels v. Air Transp. Loc. 504*, 992 F.2d 12, 15 (2d Cir. 1993)).

      2.  Application

      Defendants argue that the Original Contract is incorporated by reference into the pleadings.  (*See* Mem. of Law in Supp. of Mot. ("Defs.' Mem.") 2 (Dkt. No. 35).)  "Generally, a court may incorporate documents referenced where (1) [the] plaintiff relies on the materials in framing the complaint, (2) the complaint clearly and substantially references the documents, and (3) the document's authenticity or accuracy is undisputed."  *Stewart v. Riviana Foods Inc.*, No. 16-CV-6157, 2017 WL 4045952, at *6 (S.D.N.Y. Sept. 11, 2017) (emphasis omitted) (collecting cases); *see also Dunkelberger v. Dunkelberger*, No. 14-CV-3877, 2015 WL 5730605, at *5 (S.D.N.Y. Sept. 30, 2015) ("To be incorporated by reference, the complaint must make a clear, definite, and substantial reference to the documents, and to be integral to a complaint, the plaintiff must have (1) actual notice of the extraneous information and (2) relied upon the documents in framing the complaint."  (alterations omitted) (quoting *Bill Diodato Photography LLC v. Avon Prods., Inc.*, No. 12-CV-847, 2012 WL 4335164, at *3 (S.D.N.Y. Sept. 21, 2012))).

      Here, Plaintiff clearly relied on the Original Contract in framing the Second Amended Complaint and the Original Contract is clearly and substantially referenced in the Second Amended Complaint.  (*See generally* SAC.)  Moreover, Plaintiff does not appear to object to the incorporation of the Original Contract in the Second Amended Complaint.  (*See generally* Pl.'s

Mem.)  As such, the Court will consider the Original Contract in ruling on the matters subject to

Defendants' Motion To Dismiss.  *See Jacob v. Lorenz*, No. 21-CV-6807, 2022 WL 4096701, at

*5 (S.D.N.Y. Sept. 7, 2022) (holding contract was incorporated by reference when the complaint

made "clear, definite, and substantial reference" to a contract).

      Next, the Email from Capital One that Plaintiff attaches to his Opposition is quoted from

directly in his Second Amended Complaint—as such, it is clearly incorporated by reference.

(SAC ¶ 21.)  Accordingly, the Court will consider the Email 2nd amended in ruling on the

matters subject to Defendants' Motion To Dismiss.  *See Cromwell-Gibbs v. Staybridge Suite*

*Times Square,* No. 16-CV-5169, 2017 WL 2684063, at *1 n.2 (S.D.N.Y. June 20, 2017) (holding

email chain was incorporated by reference when the complaint made "direct reference to the e-

mail chain [and] the contents of the e-mails exchanged").

      Finally, Defendants argue that Plaintiff "incorporated communications between himself

and Capital One regarding the Temporary Payment Reduction Agreement into his [Second

Amended Complaint] by identifying emails and phone calls with Capital One" and that,

therefore, the Court may consider the TPRA as integral to the Second Amended Complaint.

(Defs.' Mem. 2.)  Even if not incorporated by reference, a document on which the complaint

"solely relies and which is integral to the complaint," *Roth v. Jennings*, 489 F.3d 499, 509 (2d

Cir. 2007) (citation, emphasis, and quotation marks omitted), or a document on which "the

complaint relies heavily on upon its terms and effect," *DiFolco v. MSNBC Cable L.L.C.*, 622

F.3d 104, 111 (2d Cir. 2010) (quotation marks omitted), may also be considered by the Court on

a motion to dismiss. Documents are "integral" where the plaintiff had to rely on their content "in

order to explain what the actual unlawful course of conduct was on which the [d]efendants

embarked." *Thomas*, 232 F. Supp. 2d at 276; *see also Gantt v. Ferrara*, No. 15-CV-7661, 2017

WL 1192889, at *14 (S.D.N.Y. Mar. 29, 2017) (holding documents were integral to the complaint where the plaintiff "relied heavily upon [them] in framing the [c]omplaint" (alterations in original) (citation omitted)).  Additionally, "no serious question as to [the documents'] authenticity can exist," *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991), and it must be "clear on the record that no dispute exists regarding the authenticity or accuracy of the document," *DiFolco*, 622 F.3d at 111 (citation and quotation marks omitted).  It appears that Plaintiff is alleging he did not receive the TPRA until it was attached to Defendants' Motion. (SAC ¶ 23; Reply to Mot. to Dismiss ("Pl.'s Mem.") 6 (Dkt. No. 38).)  Accordingly, Plaintiff could not have relied on the content of the TPRA in his Second Amended Complaint to explain Defendants' unlawful course of conduct because Plaintiff alleges he never received the TPRA. Because the TPRA is not integral to the Second Amended Complaint, the Court will not consider the TPRA.

### B.  Factual Background

Plaintiff owned a 2018 Dodge Challenger, which was financed with a loan through Capital One.  (SAC ¶ 14.)  The Original Contract between Capital One and Plaintiff specified a payment schedule of 72 monthly payments beginning October 30, 2020 of $525.26.  (Defs.' Mem. Ex. 1.)  The Original Contract contained a clause stating that "[a]ny change to this contract must be in writing and we must sign it.  No oral changes are binding."  (*Id*.)  Sometime prior to January 7, 2022, Plaintiff fell behind on his obligations to Capital One.  (SAC ¶ 17.)  On January 7, 2022, Plaintiff called Capital One and explained that he had experienced a loss of income due to the pandemic.  (*Id*. ¶ 18.)  Plaintiff alleges that at that time, the Capital One representative advised Plaintiff that he "qualified for a new loan program for the next six months, and that all he had to do was to make a good faith payment prior to January 16, 2022."  (*Id*. ¶ 19.)  On that

call, the Capital One representative also advised Plaintiff that Capital One would be sending him a document to sign as part of this new loan program. (*Id.* ¶ 20.) On January 12, 2022, Capital One then sent Plaintiff an Email confirming the agreement to enroll Plaintiff in this new loan program, stating:

> Please make your good faith payment of $262.63 by January 16, 2022 in order to move forward with your Temporary Payment Reduction Plan enrollment. If you made a partial good faith payment, please pay the remaining amount. If we don't receive your payment by January 16, 2022, you may not be enrolled in the plan and collections activities may resume. After we receive your good faith payment, please make sure to also sign and return your agreement letter to complete your enrollment in the Temporary Payment Reduction Plan.

(*Id.* ¶ 21.) Plaintiff then made his good faith payment on January 14, 2022. (*Id.* ¶ 22.) Plaintiff alleges he never received the document that Capital One said they would send him as part of the Temporary Payment Reduction Plan ("TPRP"). (*Id.* ¶ 23.)

Capital One contracted with Dezba to repossess Plaintiff's vehicle. (*Id.* ¶ 24.) At approximately 2:30 a.m. on February 7, 2022, Plaintiff saw Dezba's tow truck attempting to tow his vehicle. (*Id.* ¶ 25.) Plaintiff then went outside his home, and confronted the person moving his vehicle, who was attempting to secure Plaintiff's vehicle for transport to the repossession yard. (*Id.* ¶ 26.) Plaintiff advised the Dezba employee that he should not be repossessing Plaintiff's vehicle because Plaintiff had entered into an agreement with Capital One and timely made his good faith payment as agreed. (*Id.* ¶ 27.) Dezba's employee did not release the vehicle and continued with the repossession. (*Id.* ¶ 28.)

C. Procedural History

Plaintiff filed his initial Complaint on March 2, 2022. (Dkt. No. 1.) Plaintiff filed his Amended Complaint on May 10, 2022. (Dkt. No. 18.) Plaintiff filed the Second Amended Complaint on June 22, 2022. (Dkt. No. 30.) Defendants filed the instant Motion on July 8,

2022.  (Dkt. No. 35.)  Plaintiff filed his Opposition on July 22, 2022.  (Dkt. No. 38.)  Finally, Defendants filed a Reply on August 5, 2022.  (*See* Reply to Mot. ("Defs.' Reply Mem.") (Dkt. No. 39).)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S.  544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted).   Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570.  However, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . .  be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, as noted, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

B. Analysis

Defendants contend that Plaintiff's causes of action are based on two theories of liability: (1) that Defendants lacked the present right to take possession of his vehicle because the Parties modified the Original Contract, thereby curing his default and (2) that Defendants breached the peace by repossessing his vehicle after he objected to the repossession. (Defs.' Mem. 1.) Defendants argue that Plaintiff's claims fail because Capital One had the present right to repossess Plaintiff's vehicle because the Original Contract was never modified, and that Plaintiff's breach of peace claim must fail because a verbal objection is insufficient under New

York law to sustain a breach of peace claim.  (*Id.*)  Plaintiff argues that the TPRP agreement was not a modification but rather a new agreement, or alternatively, that the Original Contract was successfully modified, and that the repossession over his objection constituted a breach of the peace.  (*See generally* Pl.'s Mem.)

### 1.  Unlawful Repossession

Under the New York Uniform Commercial Code, after a borrower defaults, a secured party "may reduce a claim to judgment, foreclose, or otherwise enforce the claim [or] security interest . . . by any available judicial procedure."  *Bank of Am., N.A. v. Jacobi Tool & Die M.F.G.*, No. 17-CV-6828, 2019 WL 3553796, at *6 (E.D.N.Y. Aug. 5, 2019) (alterations in original) (quoting N.Y. U.C.C. § 9-601(a)(1)).  After a default, "a secured party may take possession of the collateral" either "pursuant to judicial process[ ] or without judicial process, if it proceeds without breach of the peace."  N.Y. U.C.C. § 9-609(a)(1), (b)(1)–(2).  Accordingly, this Court must determine whether (1) Plaintiff was no longer in default because of the existence of an agreement regarding the TPRP and (2) whether Dezba breached the peace by repossessing the vehicle over Plaintiffs' objection.

### a.  Existence of an Agreement

Defendants argue that because Plaintiff never signed the agreement letter, there was no binding contract and therefore Plaintiff was in default due to his missed payments.  (Defs.' Reply Mem. 4–5.)  Plaintiff, on the other hand, contends he was not in default because he had an agreement with Capital One regarding the TPRP that was in effect because "all he had to do was to make a good faith payment of $262.63 prior to January 16, 2022" to be entered into the TPRP, which he alleges he did.  (Pl.'s Mem 5–6.)  Therefore, this Court must determine whether

Plaintiff's signing of the letter agreement was a condition necessary for the effectuation of the TPRP agreement.

"The parties' intent is the driver of contract formation, such that if either party communicates an intent not to be bound [until some specified event,] no amount of negotiation or oral agreement to specific terms will result in formation of a binding contract." *Garra v. Metro-N. Commuter R.R.*, No. 17-CV-1293, 2021 WL 1536499, at *7 (S.D.N.Y. Feb. 12, 2021) (citation and quotation marks omitted). Accordingly, the parties to a contract can "condition the performance of either party, or the validity of the entire contract itself, on the occurrence of an event." *Goldstein v. Solucorp Indus., Ltd*., No. 11-CV-6227, 2017 WL 1078739, at *5 (S.D.N.Y. Feb. 10, 2017), *report and recommendation adopted*, 2017 WL 1067792 (S.D.N.Y. Mar. 21, 2017); *see also Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd.*, 327 F. Supp. 3d 673, 680 (S.D.N.Y. 2018) (explaining that "no contract arises 'unless and until the condition [precedent] occurs'" (quoting *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co*., 660 N.E.2d 415, 418 (1995))). Under such circumstances, the contractual obligation is only triggered if the specified event occurs. *Goldstein*, 2017 WL 1078739, at *5 (citing *Office of Comptroller Gen. of Republic of Bolivia v. Int'l Promotions & Ventures, Ltd.*, 618 F. Supp. 202, 207 (S.D.N.Y. 1985)); *Oppenheimer & Co.*, 660 N.E.2d at 418 (defining a condition precedent is "an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises"); *see also* Restatement (Second) of Contracts § 224 ("A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due.").

"Conditions [precedent] are not favored under New York law, and in the absence of unambiguous language, a condition [precedent] will not be read into the agreement." *CBRE, Inc.*

*v. Pace Gallery of N.Y., Inc.*, No. 17-CV-2452, 2021 WL 1198644, at *6 (S.D.N.Y. Mar. 30, 2021) (alterations in original), *reconsideration denied*, 2022 WL 683744 (S.D.N.Y. Mar. 8, 2022).  Unambiguous language indicating a condition precedent can include the terms "on condition that," "provided that," "if," "unless and until," or "null and void."  *Id*. (citing *Su Mei, Inc. v. Kudo*, 755 N.Y.S.2d 481, 483 (App. Div. 2003); 2 E. Allan Farnsworth, Farnsworth on Contracts § 8.2 (3d ed. 2004) ("Parties often use language such as 'if,' 'on condition that,' 'provided that,' 'in the event that,' and 'subject to' . . . but other words may suffice.")).  "[A] court must look to both the placement of the conditional language and the context in which it is used in order to determine whether the parties intended to impose conditions precedent[.]"  *Pike Co., Inc. v. Universal Concrete Prods., Inc.*, —F. Supp. 3d—, 2022 WL 2919309, at *8 (W.D.N.Y. July 22, 2022) (citation omitted).

For example, in *Oppenheimer*, a conditional letter agreement contained more than one provision that explicitly declared that, in the absence of certain conditions, the agreement "shall be deemed null and void and of no further force and effect," and neither party was to have "any rights against nor obligations to the other."  *Oppenheimer*, 660 N.E.2d at 416.  Another provision of the agreement stated that the parties "agree not to execute and exchange the Sublease unless and until . . . the conditions set forth in paragraph (c) [requiring written consent] are timely satisfied."  *Id*. at 417.  The court held that the letter agreement contained a condition precedent because it provided "in the clearest language that the parties did not intend to form a contract 'unless and until' [the] defendant received written notice of the prime landlord's consent on or before February 25, 1987."  *Id*. at 421.

Here, Plaintiff alleges that an email confirming the oral agreement to enroll Plaintiff in the TPRP stated in part:

> Please make your good faith payment of $262.63 by January 16, 2022 in order to move forward with your Temporary Payment Reduction Plan enrollment. . . . If we don't receive your payment by January 16, 2022, you may not be enrolled in the plan and collections activities may resume.  After we receive your good faith payment, please make sure to also sign and return your agreement letter to complete your enrollment in the Temporary Payment Reduction Plan.

(SAC ¶ 21.)  The email clearly states that enrollment in the TPRP occurs upon the good faith payment and is then completed upon signature of the agreement letter.  Accordingly, the signing and returning of the agreement letter is plainly a prerequisite to completion of enrollment in the TPRP.  Courts have regularly upheld requirements that agreements be signed as conditions precedent to performance.  *See, e.g., Preferred Mortg. Brokers, Inc. v. Byfield,* 723 N.Y.S.2d 230, 231 (App. Div. 2001) (holding that a signed agreement was a condition precedent to payment when a contract required defendants to "pay the plaintiff a fee directly upon [the] signed acceptance of a commitment" (quotation marks omitted)); *Brois v. DeLuca*, 546 N.Y.S.2d 3, 3 (App. Div. 1989) (concluding that the language "[t]his Contract is not binding until executed by Seller and delivered to Purchaser" was a condition precedent).  Plaintiff has alleged he took the first step in enrolling in the TPRP but has not alleged he returned the signed agreement letter, a necessary step to complete enrollment.  As Plaintiff has not alleged that he signed and returned the agreement letter, he has not fulfilled a condition precedent to enrollment in the TPRP.  Accordingly, Plaintiff has not alleged he entered into a binding agreement with Capital One regarding the TPRP that would have cured his default.

### b.  Enforceability of the Modification

Defendants argue that Plaintiff's claims also fail as a matter of law because the Original Contract could only be modified by a written and signed agreement.  (Defs.' Mem. 4.)  The Court agrees.

Defendants point to the statute of frauds and New York General Obligation Law § 15-301 in support of their proposition. (*Id*. at 5.) Under the statute of frauds, an "agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking" amongst other things, "[b]y its terms is not to be performed within one year from the making." N.Y. Gen. Oblig. Law § 5-701. New York General Obligation Law § 15-301 provides that a "written agreement or other written instrument which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought or by his agent." N.Y. Gen. Oblig. Law § 15-301.

Plaintiff argues that his claims do not depend on the modification of the Original Contract and therefore do not implicate the statute of frauds or the no oral modification clause, because the TPRP was a "new [six]-month loan program" rather than a modification of the existing Original Contract. (Pl.'s Mem. 4–6.) However, enrollment in the TPRP appears to stop collection activities upon the receipt of a good faith payment of $262.63, less than the monthly payments required by the Original Contract of $525.26. (SAC ¶¶ 17–21; Defs.' Mem. Ex. 1.) Accordingly, enrollment in the TPRP modified the payments necessary under the Original Contract and constitutes a modification. *See Sarcona v. DeGiaimo*, 641 N.Y.S.2d 479, 480–81 (App. Div. 1996) (analyzing an oral agreement that changed the contracted payment plan from a 36-month plan to a 60-month plan with correspondingly reduced payments as a modification); *see also BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 778 F. Supp. 2d 375, 412 (S.D.N.Y. 2011) (holding that a letter was a modification rather than a new agreement because the letter, on its face, purported to enforce obligations and assert rights created by the original contract).

13

i.  Statute of Frauds

In assessing the enforceability of an oral modification to a contract that was subject to the statute of frauds, the court in *Tierney v. Omnicom Grp. Inc*., No. 06-CV-14302, 2007 WL 2012412 (S.D.N.Y. July 11, 2007) explained that "[i]f there is any possibility that the oral agreement, according to the parties' terms, can be performed within one year, the oral agreement does not need to be memorialized in writing to be enforceable." *Id*. at *6 (citing *D & N Boening, Inc. v. Kirsch Beverages, Inc*., 63 N.Y.2d 449, 455 (N.Y. 1984)).  In *Tierney,* the contract at issue was a three-year employment contract for a plaintiff to become president of a company and manage investments in digital marketing companies for an agreed-upon salary and stock options. *Id*. at *1.  Ultimately, that contract was transferred via an oral modification to another company, such that Plaintiff would continue his responsibilities as the eventual CEO of the second company.  *Id*. at *2.  Because the "alleged Oral Modifications were part and parcel of an agreement that was, by its terms, to be performed over a three-year period," the court held that the oral modification was subject to the statute of frauds.  *Id*. at *6.  This case is unlike *Tierney* because Plaintiff alleges the TPRP was to last for a definitive period of six months, therefore the modification was not "part and parcel" of the Original Contract, and accordingly it is not subject to the statute of frauds.[1]

ii.  New York General Obligations Law § 15-301

Because the Original Contract contained a no oral modification clause, it is subject to New York General Obligations Law § 15-301 and any modification was required to be in writing

---

[1] The Court also notes that Defendants have provided no case law to support the notion that the statute of frauds applies to a modification to a contract that by its terms is not to be performed within one year if that modification can be performed in under a year.

and signed by Capital One.  "In New York, signed electronic communications between parties are sufficient to modify contract terms." *In re Lebenthal Holdings, LLC,* No. 17-CV-13337, 2019 WL 6379779, at *8 (B.R. S.D.N.Y. Nov. 27, 2019) (discussing New York law in the context of New York General Obligations Law § 15-301).  Plaintiff does not argue that the Email memorializing the oral agreement constitutes a writing signed by Capital One.  Indeed, there is no signature in the Email.  (SAC ¶ 21; Pl.'s Mem. Ex. 1.)  Because the Second Amended Complaint does not allege the modification was in writing and signed by Capital One, in email or other form, the New York General Obligations Law § 15-301 signature requirement is not satisfied.  *See A&S Reps, LLC v. N. Am. Enclosures, Inc*., 814 N.Y.S.2d 559 (table) (Sup. Ct. 2005) (holding that an unsigned email that memorialized defendants' proposal did not satisfy New York General Obligations Law § 15-301); *cf. Stanley Works Israel Ltd. v. 500 Grp., Inc*., 332 F. Supp. 3d 488, 504 (D. Conn. 2018) (holding that the "exchange of signed electronic writings [] or emails" satisfied New York General Obligations Law § 15-301).[2]

_____

[2] While there is little case law addressing emails as signed writings under New York General Obligations Law § 15-301, the caselaw in the statute of fraud context is more developed. In the statute of frauds context, some cases have found that "e-mails . . . constitute signed writings within the meaning of the statute of frauds" when a party's name is "at the end of his e-mail signif[ying] his intent to authenticate the contents." *Stevens v. Publicis, S.A.,* 854 N.Y.S.2d 690, 692 (App. Div. 2008) (quotation marks omitted); *Rosenfeld v. Zerneck*, 776 N.Y.S.2d 458, 460 (Sup. Ct. 2004) ("This Court holds that the sender's act of typing his name at the bottom of the e-mail manifested his intention to authenticate this transmission for Statute of Frauds purposes . . . ."). However, courts have held that an email "which contained a pre-printed signature [ ] was not a sufficient writing under the statute of frauds." *Bayerische Landesbank v. 45 John St. LLC*, 960 N.Y.S.2d 64, 65–66 (App. Div. 2013) (citations omitted); *see also Mark Bruce Int'l, Inc. v. Blank Rome LLP*, 866 N.Y.S.2d 92 (table) (Sup. Ct. 2008), *aff'd*, 876 N.Y.S.2d 19 (2009) (comparing pre-printed signature blocks in emails to "automatic imprinting, by a fax machine, of the sender's name at the top of each page transmitted," which the New York Court of Appeals held did not satisfy the requirement for a signed writing in *Parma Tile Mosaic & Marble Co., Inc. v. Estate of Short*, 663 N.E.2d 633 (1996)).  Here, the Email does not contain a name or even a preprinted signature.  Accordingly, the Email does not satisfy the signature

"[U]nder the doctrine of partial performance," however, "an oral agreement may be enforced even in the absence of a writing if either party has partially performed under the terms of that oral agreement." *Premier Med. Sys., LLC v. NeuroLogica Corp*., No. 21-CV-1337, 2022 WL 603999, at *9 (S.D.N.Y. Feb. 28, 2022) (citing *Merrill Lynch Interfunding, Inc. v. Argenti*, 155 F.3d 113, 121 (2d Cir. 1998)); *Mindspirit, LLC v. Evalueserve Ltd.*, 470 F. Supp. 3d 366, 380 (S.D.N.Y. 2020) (same). "For partial performance to overcome § 15–301, that partial performance must be 'unequivocally referable' to the new contract." *Merrill Lynch*, 155 F.3d at 122 (citing *Rose v. Spa Realty Assocs.*, 366 N.E.2d 1279, 1283 (N.Y. 1977)). To be "unequivocally referable," "the action taken must be unintelligible or at least extraordinary, explainable only with reference to the oral argument." *Id*. (quotation marks and citation omitted). Accordingly, "[i]f the conduct that allegedly constituted partial performance of the oral agreement to modify was in fact compatible with the original agreement, the oral agreement will not be enforced." *Towers Charter & Marine Corp. v. Cadillac Ins. Co*., 894 F.2d 516, 522 (2d Cir. 1990).

Equitable estoppel can also serve to overcome a provision that prohibits oral modifications to a contract. "Once a party to a written agreement has induced another's significant and substantial reliance upon an oral modification, the first party may be estopped from invoking the statute to bar proof of that oral modification." *Rose*, 366 N.E.2d at 1283 (citations omitted); *Randolph Equities, LLC v. Carbon Cap., Inc*., 648 F. Supp. 2d 507, 518

---

requirement because there is no name or signature in the Email. *Cf. Ion Audio, LLC v. Bed, Bath & Beyond, Inc*., No. 15-CV-8292, 2019 WL 1494398, at *3 (S.D.N.Y. Apr. 2, 2019) (holding that email exchanges, with a signature block, containing the typed name and title of the representative from two companies, were sufficient to modify a contract under the statute of frauds).

(S.D.N.Y. 2009) ("A party can overcome a no-oral-modification clause by showing either partial performance or equitable estoppel."). "Comparable to the requirement that partial performance be unequivocally referable to the oral modification, so, too, conduct relied upon to establish estoppel must not otherwise be compatible with the agreement as written." *Rose*, 366 N.E.2d at 1283 (citations omitted).

Plaintiff primarily cites to *Rose* and *Sarcona* in support of his position that his payment of $262.63 sufficiently alleges partial performance that is unequivocally referable to the oral modification.  (Pl.'s Mem. 9–11.)  In *Rose*, the plaintiff land developers entered into a written agreement to purchase land from the defendants, which specified that it could not be modified orally.  *Rose*, 366 N.E.2d at 1281.  The purchase process was broken down into stages so that neither party was obligated to proceed further unless approvals for at least 150 dwelling units had been obtained for construction on the first parcel.  *Id.*  However, before any of the property was conveyed, it was discovered that sewage problems made it unlikely that the sellers would be able to obtain approvals for the 150 units on the first parcel.  *Id.* at 1281–82.  The parties in *Rose* orally agreed to a modification by which the number of units to be built on the first parcel would be reduced from 150 units to 96 units.  *Id.* at 1282.  The New York Court of Appeals held that this oral modification was sufficiently supported by conduct "unequivocally referable" to the modification when approval was sought for only 96 units.  *Id.* at 1284.

In *Sarcona v. DeGiaimo*, the New York Appellate Division found that a triable issue of fact existed regarding whether conduct was unequivocally referable to an oral modification when the plaintiff alleged that the defendant had orally agreed to modify the original written agreement from a 36-month payment plan to a 60-month payment plan with correspondingly reduced payments.  641 N.Y.S.2d at 481.  Specifically, the court held that where the check specifically

17

referred to 60 payments as opposed to 36 payments and the check was drawn for the same amount set forth in a letter stating the terms of the oral modification, "that check could not be construed as a permissible lesser payment under the original [ ] agreement." *Id*.

However, since *Rose* and *Sarcona,* courts have held that payment of a lesser amount than required by a contract is not unequivocally referrable to an oral modification, even if the amount coincides with that required under the modification. *See Am. Int'l Tel., Inc. v. Mony Travel Servs., Inc*., No. 99-CV-11581, 2001 WL 209918, at *4–5 (S.D.N.Y. Feb. 23, 2001) (holding that making multiple $200,000 payments which was consistent with the oral modification agreement was not "unequivocally referable" to the modification because it was also compatible with conduct under the original contract which already required payment); *Amresco Fin. I, L.P. v. Stone-Tec, Inc.,* No. 98-CV-2872, 1998 WL 888987, at *3 (S.D.N.Y. Dec. 21, 1998) ("Here, the partial performance alleged by defendants was the payment of money—the very thing expressly required by the Credit Agreement.  The fact that the amount of the payments ($5,000, $10,000, $10,000) coincide with the amounts required to be paid pursuant to the alleged oral agreement is of no legal import.").  Importantly, in 2013, the New York Court of Appeals held that paying only part of one's debt is "just as demonstrative of breach of contract as of completion of the purported oral modification." *Eujoy Realty Corp. v. Van Wagner Comm'ns,* LLC, 4 N.E.3d 336, 345 (N.Y. 2013).  In *Eujoy,* a contract for the lease of the billboard stated that the annual basic rent for the year of 2007 was $96,243.00, paid in advance on January 1, 2007.  *Id.* at 338.  Defendants argued that there had been an oral agreement between the contracting parties that the lease would terminate as of January 8, 2007 and that rent would be prorated for the first week of January 2007.  *Id.* at 339–40.  The court held that payment of $2,109.43 on January 16, 2007, which was the prorated weekly amount due, was not

18

unequivocally referable to the oral modification.  *Id.* at 344–45.  The court noted that Section 15-301 "becomes meaningless if . . . nonpayment [of a portion] is sufficient to prove an oral modification of payment terms, or estop the [obligee] from recovering the shortfall."  *Id.* (citation omitted).  Accordingly, Plaintiff's payment to Capital One, although consistent with the oral modification, is not unequivocally referable to the oral modification when Plaintiff had an underlying contractual obligation to make payments to Capital One.  *See Stiching v. Capstone Credit, LLC*, No. 21-CV-2102, 2022 WL 18027614, at *6 (S.D.N.Y. Dec. 30, 2022) (holding that payment of lesser amount than required by contract as specified by the oral agreement was not unequivocally referable to the oral modification (citing *Eujoy Realty Corp.*, 4 N.E.3d at 345)).

Accordingly, because Plaintiff has not plausibly alleged the existence of a modification that would prevent him from being in default, he has not plausibly alleged unlawful repossession on the basis that Defendants did not have a present right to his vehicle.  N.Y. U.C.C. Law § 9-609 ("After default, a secured party . . . may take possession of the collateral.");  *Barrett v. Harwood*, 189 F.3d 297, 300 (2d Cir. 1999) ("On default of payment, under the New York Uniform Commercial Code, a secured party has the right to take possession of its collateral.");  *Gill v. Bd. of Nat'l Credit Union Admin. for Sikh Fed. Credit Union*, No. 93-CV-1597, 2018 WL 5045755, at *9 (E.D.N.Y. Oct. 16, 2018) (holding that repossession was not improper when plaintiff had defaulted on the loan agreement for his vehicle when an oral agreement regarding the spread of previous payments was unenforceable).

### c.  Breach of the Peace

The New York Unified Commercial Code "does not define or explain the conduct that will constitute a breach of the peace, leaving that matter for continuing development by the

courts."  N.Y. U.C.C. Law § 9-609 cmt. (McKinney 2001); *see also Cherno v. Bank of Babylon*, 282 N.Y.S.2d 114, 119 (Sup. Ct. 1967) (noting the statute "makes no attempt to articulate the standards for determining whether the repossession can be accomplished without breach of the peace" (citation omitted)), *aff'd*, 288 N.Y.S.2d 862 (mem.) (App. Div. 1968).  Accordingly, courts look to New York law to determine the common-law definition of a breach of peace.  *Gill*, 2018 WL 5045755, at *10 ("[D]etermining what constitutes a breach of the peace is construed according to the common law.").

In the criminal context, New York State courts have described breach of the peace as "a disturbance of public order by an act of violence, or by any act likely to produce violence, or which, by causing consternation and alarm, disturbs the peace and quiet of the community." *People v. Smith*, 225 N.E.2d 531, 534 n* (N.Y. 1967) (quoting *People v. Most*, 64 N.E. 175, 177 (N.Y. 1902)).  Courts in New York have used this standard for breach of the peace in the repossession context.  *See, e.g., Vassel v. Palisades Funding Corp.*, No. 19-CV-3241, 2020 WL 2797274, at *3 (E.D.N.Y. May 28, 2020) (holding that breach of peace was plausibly alleged when agents "resorted to force to effectuate the repossession" by pulling plaintiff out of his car); *Gerbasi v. NU Era Towing and Service, Inc.*, 443 F. Supp. 3d 411, 413–14 (W.D.N.Y. Mar. 9, 2020) (holding that breach of peace was plausibly alleged when the agent trespassed on plaintiff's property, plaintiff orally objected at the scene, the agent threatened both her and her son, and plaintiff called the police); *Wombles Charters, Inc. v. Orix Credit Alliance, Inc.*, No. 97-CV-6186, 1999 WL 498224, *2–3 (S.D.N.Y. Jul. 14, 1999) (holding that, even taking Plaintiff's facts that defendant cut a lock to gain entry into the premises as true, there was no breach of the peace); *Griffin v. Stanek*, No. 95-CV-202, 1997 WL 394660, at *4 (N.D.N.Y. Jul. 10, 1997) (noting that the standard articulated in *Most* is utilized in the repossession context); *Hilliman v.*

*Cobado*, 499 N.Y.S.2d 610, 614 (Sup. Ct. 1986) (holding breach of peace occurred where creditor entered onto private property of debtor who had not defaulted, violated warning of sheriff's lieutenant that he would be arrested if he took cattle which were collateral from property, proceeded to release the cows by beating and herding them, and stated, over debtor's protest, "to hell with this, we're taking the cows"); *Global Casting Indus., Inc. v. Daley-Hodkin Corp.*, 432 N.Y.S.2d 453, 455–56 (Sup. Ct. 1980) (holding that entry into debtor's premises by use of a key unauthorizedly obtained did not constitute a breach of the peace); *Cherno*, 282 N.Y.S.2d at 120  (holding that the use of a key that was "unauthorizedly obtained" by bank employees to enter the premises which caused the landlord to "only (1) [] call for the police and (2) [] request to the bank employees that they leave the key when they were through" did not constitute a breach of the peace).[3]

Plaintiff alleges he "confronted the person moving his vehicle" and "advised [him] . . . that he should not be repossessing the [] vehicle" because Plaintiff had entered into an agreement with Capital One and made a good faith payment.  (SAC ¶¶ 26–27.)  It is unclear whether New York courts would consider taking of a vehicle upon default over the oral objection of the owner a breach of the peace under the *Most* standard.  In *Gill*, the court acknowledged it "could not locate a New York court that had addressed" the question of whether repossessing a vehicle in a public location over the verbal objection of the owner constituted a breach of the peace.  2018 WL 5045755, at *10.  The *Gill* court looked to out of circuit law in determining that "the taking

---

[3] Plaintiff argues this Court should not apply the *Most* standard, because "it would make little sense to simply import the criminal standard articulated in *People v. Most* (and unquestionably relied upon by Magistrate Judge Go in the *Gill* matter) into the U.C.C."  (Pl.'s Mem. 17–18.)  However, it is clear that New York courts and courts applying New York law have utilized the *Most* standard in the repossession context.  This Court sees no reason to deviate from this precedent.

of a vehicle on default from a public location over the oral objection of the owner, however strenuous, is not a breach of the peace unless accompanied by factors indicating that the activities of the repossession agent are of a kind likely to cause violence, or public distress and/or consternation." *Id*. at *10–11 (citing *Clarin v. Minn. Repossessors, Inc*., 198 F.3d 661, 664 (8th Cir. 1999) (holding there was no breach of the peace despite protests of the owner because the repossession took place in a public parking lot, the owner was given ample opportunity to explore options by calling the police and her creditor and the repossession company did not use trickery); *Williams v. Ford Motor Credit Co*., 674 F.2d 717, 719–20 (8th Cir. 1982) (holding that where repossession agents took car from driveway in the middle of the night, and defaulting debtor exited her home to "holler" at them and neighbors were awakened, there was no breach of peace as matter of law because there was no evidence to indicate that repossessor made threats toward owner or did anything which caused her to fear physical harm); *Rainwater v. Rx Med. Servs. Corp*., No. 95-CV-5596, 1995 WL 907888, at *6 (E.D. Cal. Dec. 6, 1995) (holding that even where there was issue of fact as to whether defaulting debtor protested about repossession, in the absence of proof of the use of threat or violence against any person, there was no breach of the peace as matter of law); *Chrysler Credit Corp. v. Koontz*, 661 N.E.2d 1171, 1174 (Ill. App. Ct. 1996) (holding that where creditor entered onto private property despite express instruction of defaulting debtor not to do so, and car owner yelled "don't take it" at repossession agent, no breach of peace occurred)).

Plaintiff points out that a district court in the Second Circuit has held otherwise. In *Boles v. Cnty. of Montgomery*, No. 11-CV-522, 2014 WL 582259 (N.D.N.Y. Feb. 13, 2014), again citing out of circuit precedent, the court held that "[i]t is clear that a mere verbal objection to the removal of property constitutes a breach of the peace." *Id*. at *9 (citing *Hensley v. Gassman*, 693

F.3d 681, 689–90 (6th Cir. 2012) ("[A]n objection, particularly when it is accompanied by physical obstruction, is the debtor's most powerful (and lawful) tool in fending off an improper repossession because it constitutes a breach of the peace requiring the creditor to abandon his efforts to repossess."); 4 James J. White & Robert S. Summers, Uniform Commercial Code § 34–8 at 447 (6th ed. 2010) ("The debtor's opposition, however slight and even if merely oral, normally makes any entry or seizure a breach of the peace.")).  Plaintiff further notes that many courts around the country agree with the holding in *Boles*.  (Pl.'s Mem. 14–15.)[4]

---

[4] *See e.g., McLinn v. Thomas Cnty. Sheriff's Dep't*, 535 F. Supp. 3d 1087, 1103 (D. Kan. 2021) ("[T]he weight of state court authority holds that a repossession despite 'unequivocal oral protest of the defaulting debtor' constitutes a breach of the peace." (citing *Darren Trucking Co. v. Paccar Fin. Corp*., No. 18-CV-3936, 2019 WL 3945103, at *2 (D. Md. Aug. 20, 2019))); *Duke v. Garcia*, No. 11-CV-784, 2014 WL 1318646, at *2 (D.N.M. Feb. 28, 2014) ("[A] breach of the peace occurs when a debtor orally protests repossession."); *Clark v. Auto Recovery Bureau Conn., Inc*., 889 F. Supp. 543, 546 (D. Conn. 1994) ("By orally protesting the repossession, a debtor can undermine the creditor's right to repossess collateral."); *Fulton v. Anchor Sav. Bank, FSB*, 452 S.E.2d 208, 213 (Ga. Ct. App. 1994) ("[T]he unequivocal oral protest of the defaulting debtor eliminates self-help repossession as a lawful alternative for the secured party." (brackets omitted)); *Hollibush v. Ford Motor Credit Co*., 508 N.W.2d 449, 452–55 (Wis. Ct. App. 1993) (collecting precedent holding that a creditor's repossession in disregard of a debtor's unequivocal oral protest constitutes breach of the peace); *State v. Trackwell*, 458 N.W.2d 181, 185 (Neb. 1990) ("When a creditor repossess in disregard of the debtor's unequivocal oral protest, the repossession may be found to be in breach of the peace." (citation omitted));  *First and Farmers Bank of Somerset, Inc. v. Henderson*, 763 S.W.2d 137, 140 (Ky. Ct. App. 1988) (holding that because a breach of the peace also includes acts likely to induce violence, repossession in the face of the debtor's objection constitutes a breach of the peace); *Census Fed. Credit Union v. Wann*, 403 N.E.2d 348, 352 (Ind. Ct. App. 1980) ("[I]f the repossession is verbally or otherwise contested at the actual time of and in the immediate vicinity of the attempted repossession by the defaulting party or other person in control of the chattel, the secured party must desist and pursue his remedy in court."); *Morrison v. Galyon Motor Co*., 64 S.W.2d 851, 853 (Tenn. Ct. App. 1932) (noting that had the creditor's agent attempted to take possession of the truck against the borrower's consent, the action would have provoked a breach of the peace); *Wilson v. Kuykendall*, 73 So. 344, 344 (Miss. 1917) (holding that a party may not "take from the possession of the other party by force or against the will of the party in possession any property, even though he may have title thereto").

This Court, like courts before it, has not found any New York precedent that would illuminate how the breach of peace standard articulated in *Most* would apply in the context of verbal objections to repossessions.  In the absence of guidance from New York courts, this Court notes that in recent years, courts in the Second Circuit have begun to coalesce around the holding in *Gill*.  *See, e.g., Labadie v. NU Era Towing & Serv., Inc.*, No. 20-CV-722, 2022 WL 4287663, at *5 (W.D.N.Y. June 14, 2022) ("Since the *Clarin* test was applied in *Gill*, district courts within the Second Circuit found allegations [of verbal objections] sufficient to allege a repossession attempt breached the peace only when accompanied by other factors."), *report and recommendation adopted*, 2022 WL 3593108 (W.D.N.Y. Aug. 23, 2022).  For instance, in *Labadie,* the court held that the repossession of a vehicle over three objections was insufficient to constitute a breach of the peace.  *Id.* at *1.  And, in *Vassel*, the court cited *Gill* favorably in determining that a breach of peace had been plausibly alleged where force had been used to effectuate the repossession.  2020 WL 2797274, at *3.  Furthermore, in *Gerbasi,* the court held that the plaintiff's allegations that she orally objected at the scene, an agent trespassed on her property, the agent threatened both her and her son, and she called the police, plausibly alleged a breach of the peace "particularly [because of] the agent's threats that he would tase or mace [her] and [her] son." 443 F. Supp. 3d at 413–14.  These cases stand for the proposition that to constitute a breach of the peace, something more than possession over an objection is needed to constitute a breach of the peace.  This Court finds this proposition persuasive—if a mere objection constitutes a breach of the peace, a car could essentially "never be repossessed for nonpayment when the person in possession is present."  *Labadie*, 2022 WL 3593108, at *2.

Accordingly, because Plaintiff has not pled facts that approach those sufficient to constitute a breach of the peace as defined by the majority of courts in the Second Circuit,

24

Plaintiff's claim does not survive.  *Cf. Vassel*, 2020 WL 2797274, at *3 (holding that allegations

that the defendant's agent "resorted to force to effectuate the repossession" and "pull[ed the

plaintiff] out of his car" were sufficient to plead a breach of the peace); *Gerbasi*, 443 F. Supp. 3d

at 414 (holding that allegations that the defendant's agent "drove his truck and rammed [the

plaintiff's] gate[,] which broke the lock and damaged [her] fence," and threatened to "tase and

mace" the plaintiff and her son after plaintiff's objections were sufficient to plead breach of the

peace).

### 2.  Fair Debt Collection Practices Act

Plaintiff alleges that Dezba violated the Fair Debt Collection Practices Act ("FDCPA")

because it did not have a present right to possession of Plaintiff's vehicle and it breached the

peace when it repossessed the vehicle.  (SAC ¶ 29–42.)  The FDCPA prohibits debt collectors

from using "unfair or unconscionable means to collect or attempt to collect any debt,

specifically: taking or threatening to take any nonjudicial action to effect dispossession or

disablement of property if . . . there is no present right to possession of the property claimed as

collateral through an enforceable security interest."  15 U.S.C. § 1692f.  To establish a violation

of the FDCPA: "(1) the plaintiff must be a 'consumer' who allegedly owes the debt or a person

who has been the object of efforts to collect a consumer debt, and (2) the defendant collecting the

debt is considered a 'debt collector,' and (3) the defendant has engaged in any act or omission in

violation of FDCPA requirements."  *Polanco v. NCO Portfolio Mgmt., Inc.,* 132 F. Supp. 3d 567,

578 (S.D.N.Y. 2015) (citation omitted).  A "debt collector" is "any person who uses any

instrumentality of interstate commerce or the mails in any business the principal purpose of

which is the collection of any debts, or who regularly collects or attempts to collect, directly or

indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  In

addition, for the limited purposes of Section 1692f(6) of the Act, "[a debt collector] also includes

any person . . . in any business the principal purpose of which is the enforcement of security

interests." *Id*. This provision "applies to repossession agencies, those businesses which are

employed by the owner of collateral to dispossess the debtor of the collateral and return it to the

owner." *Durandisse v. U.S. Auto Task Force*, No. 06-CV-2463, 2009 WL 2337133, at *3

(S.D.N.Y. July 30, 2009) (citation omitted).

Whether a debt collector under FDCPA "had a 'present right' to [a vehicle] via an

enforceable security interest turns on [the state's Uniform Commercial Code ('UCC')]."

*Gerbasi*, 443 F. Supp. 3d at 413; *see also Vassel*, 2020 WL 2797274, at *2 (same). "Failure to

establish wrongful repossession precludes liability under the statute." *Durandisse,* 2009 WL

2337133, at *3.

As described above, Plaintiff has not plausibly alleged that Dezba did not have the

present right to the vehicle under New York Uniform Commercial Code § 9-601, because

Plaintiff has not plausibly alleged the existence of a modification to the Original Contract that

cured his default. Additionally, as detailed above, Plaintiff has not plausibly alleged that Dezba

did not have a possessory right because repossession could not be accomplished without a breach

of the peace. Accordingly, Plaintiff's FDCPA claim is dismissed. *See Labadie*, 2022 WL

4287663, at *3–5 (dismissing FDCPA claim when car was a secured debt which defendant had

the right to possess and defendant repossessed without breaching the peace); *Gerbasi*, 443 F.

Supp. 3d at 413 ("A violation of § 1692f(6) occurs only when a debt collector takes or threatens

to take nonjudicial action without a present right to possession of the property . . . ." (emphasis

omitted)).

### 3.  Conversion

Plaintiff further alleges that Defendants are liable for conversion because they wrongfully repossessed his vehicle despite the fact that he was not in default of his loan.  (SAC ¶¶ 56–61.) "New York defines conversion as the 'unauthorized exercise of dominion or control over property by one who is not the owner of the property which interferes with and is in defiance of a superior possessory right of another in the property.'"  *Marvel Worldwide, Inc. v. Kirby*, 756 F. Supp. 2d 461, 469 (S.D.N.Y. 2010) (quoting *Meese v. Miller*, 436 N.Y.S.2d 496, 500 (App. Div. 1981)).  "To prevail on such a claim, a plaintiff must demonstrate (1) a possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights."  *Azurdia v. City of N.Y.*, No. 18-CV-04189, 2019 WL 1406647, at *9 (E.D.N.Y. Mar. 28, 2019) (citations and quotation marks omitted).  As described above, Plaintiff has not plausibly alleged he had a possessory right in the property because he has not plausibly alleged the existence of a modification to the Original Contract that cured his default. Accordingly, his conversion claim is dismissed.  *Gill*, 2018 WL 5045755, at *14 (dismissing plaintiff's conversion claim because defendant had the right to repossess plaintiff's car after default); *Wombles Charters, Inc.* , 1999 WL 498224, at *3 ("Since Plaintiffs defaulted on the loan, Defendant was not exercising 'unauthorized dominion' over the property, and, thus, there was no conversion of the property in the bus."); *Sabeno v. Mitsubishi Motors Credit of Am., Inc.*, 799 N.Y.S.2d 527, 529–30 (App. Div. 2005) (holding assignee of installment contract on used motor vehicle purchased from dealership did not commit tort of conversion through its repossession of vehicle after buyer failed to make payments in accordance with contract).

#### 4.  New York General Business Law Section 349

"Section 349 [of the GBL] prohibits deceptive acts or practices in the conduct of any business, trade[,] or commerce. . . ."  *Wynn v. Topco Assocs., LLC,* No. 19-CV-11104, 2021 WL 168541, at \*2 (S.D.N.Y. Jan. 19, 2021) (quotation marks omitted).  To successfully assert a claim, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice."  *Orlander v. Staples, Inc*., 802 F.3d 289, 300 (2d Cir. 2015) (citing *Koch v. Acker, Merrall & Condit Co*., 967 N.E.2d 675 (N.Y. 2012)).  The allegedly deceptive acts or representations must be misleading to "a reasonable consumer."  *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195 (N.Y. 2002).

In their Motion, Defendants contend that Plaintiff "asserts four separate causes of action based on two theories of liability."  (Defs.' Mem. 1.)  As described above, Defendants go on to explain Plaintiff's two theories as (1) "Capital One lacked the present right to take possession of the vehicle because the parties modified the underlying contract after he made a single partial payment" and (2) "Dezba breached the peace by repossessing the vehicle after he told the Dezba employee he had a modification with Capital One."  (*Id*.)  Defendants' Motion addresses those two theories of liability.  (*See generally id*.)  However, in addition to these theories, Plaintiff advances another theory of liability in his Second Amended Complaint under New York General Business Law Section 349: that Defendants "trick[ed]" him "into making a payment only to then turn around and repossess his vehicle anyway."  (SAC ¶ 53.)  Defendants' only references to the allegation that Capital One misled Plaintiff are in regard to Plaintiff's estoppel argument: (1) "[t]o the extent Plaintiff contends that Capital One should be equitably estopped from raising the oral modification waiver in the Contract, along with the statute of frauds, because it 'tricked' him

into making a modified payment and never sent the Agreement, those allegations must fail," (Defs.' Mem. 6), and (2) "Plaintiff's contention that Capital One lied to and tricked him into making a partial payment . . . is a red herring to distract the Court from the weakness of his estoppel argument," (Defs.' Reply Mem. 6).  In those sections, unrelated to the standard under New York General Business Law Section 349, Defendants argue that there "are no allegations that Capital One misrepresented the status of the TPRA to Plaintiff" and that "Plaintiff did not allege that Capital One made any misrepresentations in his Complaint and this attempt to paint Capital One in a negative light should be rejected by the Court."  (Defs.' Reply Mem. 6–7.) However, these statements ignore Plaintiff's allegations that Capital One "trick[ed]" him into making a payment and then repossessed his car by informing him that "all he had to do was to make a good faith payment" under New York General Business Law Section 349.  (SAC ¶¶ 19, 53.)

Because Plaintiffs' allegations under New York General Business Law Section 349 are dependent on whether Capital One engaged in consumer-oriented conduct that is materially misleading, a claim which Defendants have not addressed, Plaintiff's claim against Capital One under New York General Business Law Section 349 survives.  *See United Rentals, Inc. v. Wilper,* No. 21-CV-1445, 2022 WL 4120789, at *1 (D. Conn. Sept. 9, 2022) ("The defendant bears the burden of proof on a motion to dismiss for failure to state a claim under Rule 12(b)(6)."); *Smith v. Lioidice,* No. 17-CV-7028, 2021 WL 2689064, at *2 (S.D.N.Y. June 30, 2021) ("[T]he movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6).").[5]

---

[5] Because Plaintiff does not allege that Dezba engaged in any consumer-oriented conduct that was materially misleading, the claim against it fails.  *See Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 189 (E.D.N.Y. 2018) ("[T]he claims pursuant to GBL section[] 349 . . . fail because . . . Plaintiff fails to plead a material misrepresentation.");  *Millennium Health, LLC v. EmblemHealth, Inc.*, 240 F. Supp. 3d 276, 286 (S.D.N.Y. 2017) (dismissing section 349 claim

### III.  Conclusion

For the foregoing reasons, Defendants' Motion is denied in part and granted in part. Defendants' Motion is granted with regard to Plaintiff's unlawful repossession, FDCPA, and conversion claims and with regards to the New York General Business Law Section 349 claim against Dezba.  Defendants' Motion is denied with regard to Plaintiff's New York General Business Law Section 349 claim against Capital One.  Because this is the first adjudication of Plaintiff's claims on the merits, Plaintiff's unlawful repossession, FDCPA, and conversion claims, and the New York General Business Law Section 349 claim against Dezba are dismissed without prejudice.  If Plaintiff wishes to file a third amended complaint alleging additional facts and otherwise addressing the deficiencies identified above, Plaintiff must do so within 30 days of the date of this Opinion & Order.

The Court will hold a status conference on May 10, 2023, at 11:00 AM.  The Clerk of the Court is respectfully requested to terminate the pending motion at Dkt. No. 34.

SO ORDERED.

Dated:   March 29, 2023
        White Plains, New York

_____
        KENNETH M. KARAS
        United States District Judge

---

when the complaint failed "to identify the actual representations at issue" that was allegedly misleading).